Memorandum Opinion of May 25, 2006 Withdrawn; Affirmed and Substitute
Memorandum Opinion filed December 5, 2006








Memorandum
Opinion of May 25, 2006 Withdrawn; Affirmed and Substitute Memorandum Opinion filed December 5,
2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00544-CR

____________

 

OLLIE ADELAJA, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 232nd
District Court

Harris County, Texas

Trial Court Cause No. 991,150

 



 

S U B S T I T U T E   M E M O R A N D U M   O P I N I O N

We withdraw our memorandum opinion of May 25, 2006 and
substitute the following in its place.








Appellant was convicted of one count of insurance fraud and
the court assessed punishment at two years= confinement in a
state jail facility.[1] 
In two issues, appellant contends (1) the evidence is factually insufficient to
support his conviction, and (2) he received ineffective assistance of counsel. 
We affirm.

I.  Factual and Procedural Background

On June 10, 2003, appellant reported that two Hispanic men
had stolen his 1998 Toyota Camry at gunpoint.  Appellant filed an insurance
claim on the car the same day.  On November 10, 2003, after an investigation,
appellant=s insurance company paid $6,783.27 for the car and
paid an additional $476.79 to the lien holder.

On April 19, 2004, John Kim attempted to obtain title on
the 1998 Camry.  Because the car had been reported stolen, the Department of
Transportation contacted Sergeant Eric Williams of the Department of Public
Safety.  Sergeant Williams contacted Kim and discovered Kim had purchased the
car from Woong Kang.  Kang told Williams that appellant brought the Camry into
his automobile repair shop for repairs in March 2003.  Kang informed appellant
that the engine needed to be replaced and the cost would be $1700.  According
to Kang, appellant said he could not afford the repairs and told Kang to hold
the car until he could pay for the new engine.  Kang testified that appellant
did not pay for the engine, so Kang replaced the engine at his own cost and
sold the car to Kim.  Kang testified the car never left the shop until he sold
it, and he did not know that the car had been reported stolen.

Appellant testified that he did not leave his car with
Kang, and did not know how the car ended up in Kang=s repair shop. 
Appellant claimed that two Hispanic men took his car at gunpoint.  To rebut
Kang=s testimony that
the car was in the repair shop, appellant=s uncle testified
that appellant drove him to work in the Camry on June 7 and 8, 2003.  A friend
of appellant testified he had seen the Camry in a church parking lot during the
first week of June, before appellant reported the car stolen.  








A jury convicted appellant of insurance fraud, and after he
was sentenced by the trial court, appellant moved for a new trial, citing only Athe interest of
justice.@  The motion was
denied, and this appeal ensued. 

II.  Discussion

A.      Factual
Sufficiency of the Evidence

In his first issue, appellant contends the evidence is
factually insufficient to support his conviction.  Specifically, appellant
argues Kang=s testimony was not credible.  When conducting a
factual sufficiency review, we view all of the evidence in a neutral light.  See
Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  Before we may reverse for factual
insufficiency, we must first be able to say, with some objective basis in the
record, that the great weight and preponderance of the evidence contradicts the
jury=s verdict.  Watson v. State,
No. PD-469-05, 2006 WL 2956272, at *10 (Tex. Crim. App. Oct. 18, 2006). Although we
examine all of the evidence presented at trial, we may not re‑weigh the
evidence or substitute our judgment for that of the jury.  See Cain v. State,
958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (en banc).  Unless the record clearly reveals a
different result is appropriate, we Amust defer to the jury=s determination concerning what
weight to give contradictory testimonial evidence because resolution often
turns on an evaluation of credibility and demeanor.@ Johnson v. State, 23 S.W.3d
1, 8 (Tex. Crim. App. 2000) (en banc).  








A person commits the offense of insurance fraud if, with
intent to defraud or deceive an insurer, the person presents a statement for a
claim to an insurer that he knows to contain false and misleading material
information.  See Tex. Penal Code
Ann. ' 35.02 (Vernon Supp. 2005).  Kang testified appellant
took his car to Kang=s shop in March 2003, and the car never
left the shop until it was sold to Kim.  Appellant testified his car was stolen
at gunpoint on June 10, 2003, and denied having left the car with Kang. 
Appellant further presented the testimony of two witnesses who stated they had
seen appellant with his car one week before appellant=s report of the
alleged theft.  

Appellant argues the verdict is against the great weight
and preponderance of the evidence because Kang=s testimony was
not credible.  Appellant points out that Kang did not remember whether
appellant=s vehicle was towed to his shop and that he replaced
the engine in the car without a written work order, a request from appellant,
or any payment.  Appellant further argues Kang is not credible because he did
not properly file a mechanic=s lien prior to selling the car to Kim.  

The jury is the sole judge of the weight and credibility to
be given to witness testimony.  Johnson, 23 S.W.3d, at 7.  A jury=s decision is not
manifestly unjust merely because the jury resolved conflicting views of
evidence in favor of the State.  Cain, 958 S.W.2d at 410.  Although
there was conflicting evidence, the jury chose to believe Kang=s testimony that
appellant brought the car to his repair shop in March 2003 and the car never
left the shop until Kang sold it to Kim.  When recovered, the car showed no
evidence of damage, but in conformity with Kang=s version of
events, the vehicle and the engine had different identification numbers.[2] 
In addition, Sergeant Williams testified that when he contacted appellant and
told him the vehicle had been recovered, appellant said he did not need to talk
with the police, repeatedly stated that he had already settled his claim with
his insurance company, showed no interest in apprehending the persons who
committed the alleged robbery, and refused to sign a written statement.








Based on the evidence presented, the jury could have
concluded that when appellant filed the insurance claim on the car, he knew the
claim was false and intended to deceive the insurer.  After reviewing the record, we cannot
say that the great weight and preponderance of the evidence contradicts the
jury=s verdict.  See Watson, No.
PD-469-05, 2006 WL 2956272, at *10.

Appellant=s first issue is overruled.

B.      Was Appellant
Denied Effective Assistance of Counsel?








In his second issue, appellant contends he was denied
effective assistance of counsel because his trial counsel failed to object to
certain testimony and elicited improper opinion testimony that the police did
not believe appellant=s version of events.  To prevail on a
claim of ineffective assistance of counsel, an appellant must show: 
(1) his attorney=s performance fell below an objective
standard of reasonableness, and (2) there is a reasonable probability the
result of the trial would have been different but for counsel=s deficient
performance.  Strickland v. Washington, 466 U.S. 668, 693B94, 104 S. Ct.
2052, 2067B68, 80 L. Ed. 2d 674 (1984); Mallett v. State,
65 S.W.3d 59, 62B63 (Tex. Crim. App. 2001).  To satisfy the
first Strickland prong, the appellant must (1) rebut the
presumption that counsel is competent by identifying the acts or omissions of
counsel that are alleged as ineffective assistance and (2) affirmatively
prove that such acts or omissions fell below the professional norm of
reasonableness.  McFarland v. State, 928 S.W.2d 482, 514 (Tex. Crim.
App.1996) (en banc), cert. denied, 519 U.S. 1119, 117 S. Ct. 966, 136 L.
Ed. 2d 851 (1997), overruled on other grounds, Mosely v. State,
983 S.W.2d 249 (Tex. Crim. App. 1998) (en banc), cert. denied, 526 U.S.
1070, 119 S. Ct. 1466, 143 L. Ed. 2d 550 (1999).  To satisfy the second prong
of Strickland, the appellant must show the probability that the alleged
errors caused a different trial result than would have otherwise occurred is
sufficient to undermine confidence in the outcome of the proceedings.  Hernandez
v. State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999) (en banc).  In our
review, we indulge a strong presumption that counsel=s actions were
motivated by sound trial strategy, and we will not conclude the action was
deficient unless it was so outrageous that no competent attorney would have
engaged in such conduct.  Garcia v. State, 57 S.W.3d 436, 440 (Tex.
Crim. App. 2001), cert. denied, 537 U.S. 1195, 123 S. Ct. 1351, 154 L.
Ed. 2d 1030 (2003).

Appellant argues that police opinion testimony that
appellant was not telling the truth was objectionable under Rules 701 and 702
of the Texas Rules of Evidence.[3]  
See Tex. R. Evid. 701 (governing
opinion testimony by lay witnesses); Tex.
R. Evid. 702 (addressing expert testimony); Yount v. State, 872
S.W.2d 706, 709, 711 (Tex. Crim. App. 1993) (en banc) (holding that Aexpert testimony
that a particular witness is truthful is inadmissible under Rule 702.@); Matter of
G.M.P., 909 S.W.2d 198, 206 (Tex. App.CHouston [14th
Dist.] 1995, no writ) (AA determination of who is telling the
truth is the sole province of the jury.@).  Because trial
counsel elicited or did not object to such testimony by Williams, appellant
contends his counsel rendered ineffective assistance.

For example, appellant argues that Detective Dennis Matties
Atestified without
objection that he thought that Williams told Matties that he did not believe
appellant=s explanation.@  But, this
argument misstates the testimony, which was transcribed as follows:

Defense Counsel:   Did Sergeant
Williams tell you back on July 8, 2004 that the Defendant, that he had gotten a
statement from the Defendant and the Defendant admitted the vehicle was in the
possession of his mechanic at the time of the robbery?

Detective Matties:   Yes.

Defense Counsel:   Pass the
witness.

Prosecutor:            Do you
remember the specifics of that conversation without your offense report?

Detective Matties:   No I do not.








Prosecutor:            Is it
possible that OfficerCexcuse me.  Sergeant Williams told you
that he believed that the Defendant had recanted his statement?

Detective Matties:   Yes.

Prosecutor:            Did he
specifically tell you or can you say from your own personal memory whether he
specifically told you that the Defendant had recanted his story about the
robbery I mean?

Detective Matties:   No.

Prosecutor:            So it=s possible that he just told you
something along the lines of this guy is telling me one thing and I don=t believe him?

Detective Matties:   Yes.

Prosecutor:            It=s possible he told you this guy is
telling me one thing and all the other evidence says something else.  It=s possible that that=s what he told you isn=t it?

Detective Matties:   Yes.

 








Here, appellant=s trial counsel
attempted to attack Sergeant Williams=s credibility with
evidence that Williams falsely told Matties  the appellant had recanted his
earlier description of the robbery.  In response, the State elicited testimony
that Matties had no independent recollection of Williams=s statement, and
also questioned Matties regarding other possible reasons why Matties might
concluded  he need not investigate the robbery further after speaking with
Williams.  At best, Matties testified Williams might have said he disbelieved
appellant.  This testimony was offered only to show that such a statement might
have been made, not that Williams in fact disbelieved appellant.  Accordingly,
an objection to this testimony based on Texas Rule of Evidence 701 or 702 would
have been properly overruled.  See Vaughn v. State, 931 S.W.2d 564, 566
(Tex. Crim. App. 1996) (en banc) (stating that, in order to argue successfully
that trial counsel=s Afailure to object
to the State=s questioning and argument amounted to ineffective
assistance, appellant must show that the trial judge would have committed error
in overruling such an objection.@).[4] 
          Appellant also argues  his trial counsel elicited testimony that
Williams believed Kang rather than appellant.  The actual exchange was as
follows:

Defense Counsel:   What caused you
to I guess put more credibility in Mr. Kang=s version of events given the totality of versions versus
Mr. Adelaja?

Sergeant Williams: It=s what you said
the totality of the evidence.

As the
record reflects, appellant=s trial counsel asked a question that
assumed Williams found Kang=s version of events more credible than
Williams=s version of
events.  But, the question itself is not testimony, and the answer did not
state an opinion.  In addition, Sergeant Williams stated he found Kang=s Aversion of events@ credible based on
Athe totality of
the evidence@; he did not state that Kang himself was credible or
that appellant was not credible.  Hence, we are not persuaded that the trial
court would have erred in overruling an objection to this exchange on the
grounds that it impermissibly expressed an opinion on the credibility of these
witnesses in violation of Texas Rule of Evidence 701 or 702.

According to appellant, Sergeant Williams also testified
without objection that he did not believe Kang stole the car, and was convinced
there was not a robbery.  That testimony is as follows:

Prosecutor:            So at this
point has he [Kang] both identified him byCMr. Adelaja by name by photo spread?

Sergeant Williams: That=s correct.








Prosecutor:            At that
point did you suspect that Mr. Kang had stolen the vehicle?

Sergeant Williams: No.

Prosecutor:            Why not?

Sergeant Williams: Based
upon that extent of my investigation I believe that Mr. Kang had come into
possession of the vehicle by the person, known person, the Defendant Mr.
Adelaja.

Here, Sergeant Williams testified that at a certain time,
he did not consider Kang a suspect.  Williams=s testimony does
not state his opinion regarding appellant=s truthfulness. 
Notably, the only Abelief@ Williams
identified in this statement is his belief that Kang Ahad come into
possession of the vehicle by [appellant].@  Moreover,
Williams attributes this belief to his own investigation, and not to the
appellant=s truthfulness or lack of same.  This investigation
included the examination of the car, which was undamaged and which had a
replacement engine.

Appellant also points to the following testimony in support
of his argument that opinion evidence was improperly admitted:

Prosecutor:            Were you
convinced at this point that an aggravated robbery had not occurred?

Sergeant Williams: Yes, I was.

Prosecutor:            And what was
that based on?

Sergeant Williams: It
was based upon the prior interview that I had with Mr. Kim as well as Mr. Kang,
the reviewing of the offense report as well as the vehicle itself.








Here,
Williams implies that the statements of Kim and Kang and the condition of the
vehicle were inconsistent with the appellant=s report of an
aggravated robbery.  Based on this information, Williams concluded that an
aggravated robbery did not occur.  Again, Williams did not state his opinion
regarding the credibility of Kang or appellant, but testified that he reached
this conclusion based on his interviews of Kim and Kang and his review of the
offense report and the vehicle.  Moreover, the quoted testimony does not
indicate that Williams had even spoken to appellant at this time.[5] 









Because the challenged testimony does not contain expressions
of opinion regarding the witnesses= credibility,
appellant=s trial counsel did not fall short of professional
standards by failing to object to it.  Assuming, however, that the testimony
could properly be characterized as opinion testimony on the issue of
credibility,[6]
we cannot say, based on the record before us, that counsel was ineffective. 

In reviewing the record for ineffective assistance of
counsel, we begin with the strong presumption that the trial counsel=s actions Afell within the
wide range of reasonable and professional assistance.@  Bone v. State,
77 S.W.3d 828, 833 (Tex. Crim. App. 2002).  We will reverse a conviction if Athe record
demonstrates that no plausible purpose was served@ by the challenged
acts or omissions.  See Ramirez v. State, 987 S.W.2d 938, 945 (Tex. App.CAustin 1999, pet.
ref=d).  But, it is
rare that the trial record contains sufficient information to permit a
reviewing court to fairly evaluate a claim of ineffective assistance of
counsel.  Bone, 77 S.W.3d at 833.  If trial counsel=s actions may have
been the result of tactical decisions, but the record contains no specific
explanation for counsel=s decisions, we will not normally conclude
that counsel was ineffective.  Id. at 830.  Moreover, trial counsel Ashould ordinarily
be afforded an opportunity to explain his actions before being denounced@ for providing
representation below an objective standard of reasonableness.  Rylander v.
State, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003) (en banc). AAbsent such an
opportunity, an appellate court should not find deficient performance unless
the challenged conduct was >so outrageous that no competent
attorney would have engaged in it.=@  Goodspeed v.
State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting Garcia,
57 S.W.3d, at 440 (Tex.).








Moreover, appellant is not guaranteed error-free
representation; rather, he is entitled to Areasonably
effective assistance@ of counsel.  Strickland, 466 U.S.
at 687B88, 104 S. Ct. at
2064.  AThe constitutional
right to counsel does not mean errorless counsel whose competency or accuracy
of representation is to be judged by hindsight.@  Ingham v.
State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984) (en banc).  Isolated
failures to object to improper evidence do not constitute ineffective
assistance of counsel.  Id.  We instead look Ato the totality of
the representation and the particular circumstances of each case in evaluating
the effectiveness of counsel.@  Thompson v. State, 9 S.W.3d 808,
813 (Tex. Crim. App. 1999).

Here, appellant points to no evidence in the record
explaining trial counsel=s motives for allowing or eliciting
testimony indicating that Sergeant Williams did not believe appellant=s version of
events.  There is no direct evidence in the record explaining why appellant=s trial counsel
permitted such testimony, and the record does not A>affirmatively
demonstrate= the meritorious nature of the claim.@  Goodspeed,
187 S.W.3d at 392 (citing Thompson, 9 S.W.3d at 813).  Thus, appellant
is unable to Aovercome the presumption that, under the
circumstances, the challenged action >might be
considered sound trial strategy.=@  See Jackson
v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (en banc) (quoting Strickland,
466 U.S. at  689, 104 S.Ct. at 2065).

Anticipating this conclusion, appellant argues that A[n]o reasonable
trial strategy could ever justify conduct of this nature.@  We disagree. 
For exampleCand without speculating on trial counsel=s thought
processes concerning the specific exchanges at issue[7]Cwe note that the
record as a whole indicates that trial counsel generally attempted to show that
Williams=s investigation
was biased.  In his opening statement, appellant=s trial counsel
stated that:

[The] evidence will show that
Sergeant Williams gets involved in the case and I believe the evidence will
show that Sergeant Williams had a single suspect on his mind.  He does not do a
thorough job.  I believe the evidence will show that he did not consider other
possibilities.  He didn=t consider other conduct of other parties
. . . . Sergeant Williams focuses on one person and one person only and does
not consider other options.@ 








Trial counsel restated this theory of the case in a bench
conference:

Defense Counsel:   When the witness
they choose to believe [Kang] is committing a state jail felony in the presence
of this officer and admitting it I think it goes directly to the credibility of
the officer and the witness.

The Court:             He admits it
today?

Defense Counsel:   I believe so.

Prosecutor:            At no point
does Mr. Kang admit that he committed this state jail felony offense he=s never been convicted of.  He=s never even been charged with it. 
To use that impeachment evidence for his character is completely outsideC

Defense Counsel:   I=m using it to show
the bias of this witness [Williams] in his investigation.  That=s what [I] want to
do.

(emphasis
added).  Although trial counsel=s theory of the case may have required him
to show that Williams was biased, we cannot determine, on this record, if this
was in fact the reason that trial counsel permitted the specific questions and
testimony at issue.[8] 
Moreover, a reviewing court is not permitted to supply trial counsel=s reasoning by
mere speculation.  See Stults v. State, 23 S.W.3d 198, 208 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d) AWhatever trial
counsel=s reasons may have
been for pursuing the chosen course, in the absence of a record identifying
these reasons, we must presume they were made deliberately as part of sound
trial strategy.@  Id. at 209.  In sum, we cannot
conclude on this record that the actions of appellant=s trial counsel
were inconsistent with any plausible purpose or fell outside the range of
reasonable and professional assistance.








Appellant=s second issue is overruled.

III.  Conclusion

Because the record on appeal does not demonstrate that the
evidence was factually insufficient to sustain the conviction or that appellant=s trial counsel
rendered ineffective assistance, we affirm the judgment of the trial court. 

 

 

 

/s/      Eva M. Guzman

Justice

 

 

Judgment rendered
and Substitute Memorandum Opinion filed December 5, 2006.

Panel consists of
Chief Justice Hedges and Justices Yates and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  The trial court suspended the sentence for four
years.





[2]  The original engine had been replaced with a 1997
Toyota engine.





[3]  In the transcript of the trial proceedings, Williams
is not referred to as an expert, and the clerk=s record does not contain the State=s
witness list.  As a result, we are unable to ascertain whether Williams=s challenged testimony was offered as a lay or expert
opinion.





[4]  Appellant also complains of his trial counsel=s failure to raise similar objections to a portion of
the State=s closing argument in which the prosecution said that
Sergeant Williams testified he Alooked at what
Mr. Kim was telling me, what Mr. Kang was telling me and it didn=t add up and I didn=t
believe it.@ This statement by the prosecutor is argument and not
opinion testimony, and although the quoted portion of this argument goes beyond
Williams=s testimony, appellant does not contend that trial
counsel rendered ineffective assistance by failing to object on this basis. 
Moreover, a proper jury argument may draw reasonable deductions from the
evidence and answer the arguments of opposing counsel.  See Guidry v. State,
9 S.W.3d 133, 154 (Tex. Crim. App. 1999).  Thus, we disagree with appellant=s suggestion that an objection to this argument was
both required and sustainable.  





[5]  The record indicates that the lines of questioning
that appellant challenges on appeal were apparently intended to determine the
time at which appellant became a suspect.  Specifically, appellant=s trial counsel attempted to show that Williams=s investigation was biased, because Williams decided
that Kang=s version of events was accurate without performing a
thorough investigation.  Moreover, appellant=s
trial counsel pursued this line on cross-examination, and appellant does not
contend that the following exchange contains any acts or omissions by his trial
counsel:

 

Defense Counsel:            Now, based
on your discussions with Kang and Kim you formed an opinion before ever talking
to my client that he was a primary suspect correct?

Sergeant Williams:          No, I didn=t formulate an opinion at that point.  It was based
upon the statements that was [sic] provided by Mr. Kim and Mr. Kang as well as
the aggravated robbery report that was filed by the Houston Police Department. 
In correspondence with all that information together once I interviewed your
client Mr. Adelaja at that point I formulated the opinion that he was the
primary suspect.

Defense Counsel:            It was after
you talked to my client?

Sergeant Williams:          After I
talked to your client, after he viewed the photo lines up [sic] and he
identified Mr. Kang as the person that he had known for several years.

Defense Counsel:            Okay.  I
thought you had testified something to the effect of you believe Mr. Adelaja
was a prime suspect after viewing the 2 statements or talking with Mr. Kim and
Kang and getting their statements?

Sergeant Williams:          Mr. Adelaja
was the next person to interview in reference to the case.  It was no one else
to interview and after obtaining those statements and the initial interview
with him it was determined that there was no one else.  He was the primary
suspect.

Defense Counsel:            In your
opinion?

Sergeant Williams:          In my
opinion.

Defense Counsel:            Now, wouldn=t you agree when you=re doing an investigation you want to keep an open mind and evaluate
the credibility of all the witnesses?

Sergeant Williams:          That=s correct.





[6]  See Yount, 872 S.W.2d at 709 (stating that
allowing experts to testify to credibility or trustfulness, or the lack
thereof, would in most cases fall short of expert knowledge that >will assist the trier of fact.=@); Steve v. State, 614 S.W.2d 137, 139 (Tex.
Crim. App. 1981) (AWhenever the jury is in possession of the same
information as the witness and the jury can fully understand the matter and
draw the proper inferences and conclusions, the witness=s opinion testimony is unnecessary and inadmissible.@).





[7]  See Jackson, 877 S.W.2d, at 77.  





[8]  After Sergeant Williams answered trial counsel=s question as to why he Aput more credibility in Mr. Kang=s
version of events given the totality of versions versus Mr. Adelaja,@ trial counsel asked two more questions to which the
State objected.  After the trial court sustained the State=s objections to both questions, appellant=s trial court asked to approach the bench where the
quoted exchanged occurred.  Because it is not clear if the two questions to
which the trial court sustained objection were intended to be a new line of
questioning, the record does not clearly show that this conversation applies to
the earlier question as well.